MUNSON STEAMSHIP LINE v. E. STEIGER & CO.

(Circuit Court of Appeals, Second Circuit. March 10, 1905.)

No. 163.

SHIPPING—LOSS OF LOGS IN LOADING—LIABILITY OF VESSEL.

Where, in loading a cargo of mahogany logs, the ship was obliged to lie three miles off shore in the open sea, the logs being delivered in rafts, which were made fast to the ship, and bills of lading then given for the same, the vessel is not liable for logs which broke away from the rafts and were lost before they were loaded, when reasonable diligence was exercised in the loading, and the loss arose either from unusual weather conditions, making a case of perils of the sea within the exceptions in the bills of lading, or because they were insufficiently secured in the rafts through the negligence of the shipper.

[Ed. Note.—Loss by perils of the sea, see notes to The Dunbritton, 19 C. C. A. 465; Southerland-Innes Co. v. Thynas, 64 C. C. A. 118.]

Appeal from the District Court of the United States for the Southern District of New York.

For opinion below, see 132 Fed. 160.

This cause comes here upon appeal from a decree of the District Court, Southern District of New York, in favor of libelant for the sum of $344.89 (with interest and costs), being the balance of freight due for the transportation of a cargo of mahogany logs from Frontera and Tonala, Mexico, to New York. The only defense is a counterclaim for the value of 31 logs which were lost while the logs were alongside the steamer at Frontera, and before they could be stowed in the ship.

William L. Snyder, for appellant.

Charles S. Haight, for appellee.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

PER CURIAM. Frontera is an open roadstead, where a vessel, when loading, has to lie from 2½ to 3 miles off shore, exposed to the prevailing northerly winds. A tug tows out a raft of logs. The raft consists of a large cable, called the "mother rope," to which the logs are attached by short smaller ropes, called "dog ropes," each of the latter being fastened to a dog or ring driven into one end of the log. When the raft arrives, and the mother rope is made fast to the ship, delivery is made, and receipts are given. Thereupon the ship proceeds to pass the logs aboard, continuing the operation till all are stowed, unless bad weather causes a suspension of the loading. The evidence in this case shows that on several occasions logs, aggregating 31 in all, which were thus attached to the vessel, were never got aboard, because they broke off from the mother rope, and it is shown that they broke off because of the action of the wind and waves. If this condition of wind and water was abnormal, the loss would be attributable to peril of the seas, and within the exception in the bill of lading. Delivery to the ship having been made, the burden of proof is on the ship to show suf-

ficient stress of weather to make out a case of peril of the seas. But if it were held that the District Judge were in error in finding that the proof warranted such a conclusion, then upon the undisputed facts the logs broke away from their respective rafts, under a condition of weather which was to be anticipated, either because the dog ropes were not strong enough to meet the strain of ordinary weather or because the dogs or rings were insufficient or not sufficiently secured to the logs, through the negligence of the shipper. For his carelessness in that respect the ship should not be held responsible. Making delivery by means of a raft to be attached to the ship's side till the logs could be hauled aboard, it was his duty so to make up the raft that under ordinary conditions of weather it would remain intact till the ship, using proper diligence, could have got its constituent parts aboard. There is no evidence to show that the ship was negligent in not providing a sufficient force to load the logs promptly before the weather changed. On the contrary, she kept a large gang of stevedores—30 or more— aboard to do that work promptly, and we find nothing in the proof upon which she can be held responsible for failure to load these 31 logs before they broke away.

The decree is affirmed, with interest and costs.